# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| DESIROUS PARTIES UNLIMITED INCORPORATED,<br><br>             Plaintiff,<br>vs.<br><br>RIGHT CONNECTION INCORPORATED, *et al.*,<br><br>             Defendants. | Case No.: 2:21-cv-01838-GMN-BNW<br><br>**ORDER** |

Pending before the Court is the Motion for Preliminary Injunction, (ECF No. 42), filed by Plaintiff Desirous Parties Unlimited Incorporated ("Plaintiff"). Defendants Right Connection Incorporated ("Right Connection") and Donald D. Hughes II (collectively, "Defendants") filed a Response, (ECF No. 43), to which Plaintiff filed a Reply, (ECF No. 46).[1]

Also pending before the Court is Plaintiff's Motion for Leave to File Supplemental Brief, (ECF No. 69). Defendants filed a Response, (ECF No. 70), to which Plaintiff filed a Reply, (ECF No. 71).[2]

---

[1] Defendants also filed an Objection to Evidence Raised in the Motion for Preliminary Injunction, (ECF No. 45), Objections to Evidence Raised in the Reply to the Motion for Preliminary Injunction, (ECF No. 47), and a Reply to Plaintiff's Reply to the Motion for Preliminary Injunction, (ECF No. 48). Plaintiff filed a Response to Defendants' Objections to Evidence Raised in the Reply, (ECF No. 49).

Pursuant to Local Rule 7-2(g), "[a] party may not file supplemental pleadings, briefs, authorities, or evidence without leave of court granted for good cause." D. Nev. Local R. 7-2 (g). "The judge may strike supplemental filings made without leave of court." *See id*. Here, Defendants did not seek leave to file any of their objections or replies. Thus, the Court strikes Defendants' Objections, Defendants' Reply, and Plaintiff's Response pursuant to Local Rule 7-2.

[2] Plaintiff requests leave to file supplemental briefing concerning alleged, ongoing harm in the absence of an injunctive order. (Pl.'s Mot. Leave, ECF No. 69). For good cause appearing, the Court grants Plaintiff's Motion for Leave to File Supplemental Briefing

For the reasons set forth below, Plaintiff's Motion for Preliminary Injunction is **GRANTED IN PART** and **DENIED IN PART**, and Plaintiff's Motion for Leave to File Supplemental Brief is **GRANTED**.

I.  **BACKGROUND**

This action arises from Defendant Right Connection, Inc.'s alleged infringement of Plaintiff's DIRTY VIBES trademark and copyrighted material that Plaintiff uses to market its adult oriented entertainment events. (*See* Compl., ECF No. 1). Plaintiff alleges the following information.

    A.    THE AGREEMENT

Plaintiff specializes in organizing, conducting, and arranging adult oriented entertainment events, including nightclub events and destination travel packages. (*See id*. ¶ 11). David Matlock is the founder and owner of Desirous Parties Unlimited, Inc. (*See* Decl. of David Matlock ("Matlock Decl.") ¶ 1, Ex. to Binder). Plaintiff established the Desirous Parties brand as a separate and distinct brand to market and promote its events. (Compl. ¶ 23).

In April 2017, Mr. Matlock met Don Hughes ("Mr. Hughes"), owner of Right Connection, Inc. (*Id*. ¶ 21). Right Connection, Inc. is an online travel business that arranges and sells adult-oriented travel, vacations, and cruises. (*See* Decl. of James Terhune ("Terhune Decl.") ¶ 3, ECF No. 43). Mr. Hughes offered to book travel and hotel services for Plaintiff's organized events at discounted rates. (Compl. ¶ 21). Plaintiff and Defendant orally entered into an agreement, in which Defendant agreed to provide booking services for travel events that Plaintiff agreed to organize. (Matlock Decl. ¶ 6). Under this agreement, the parties orally agreed to split the profits fifty percent (50%) to Plaintiff and fifty percent (50%) to Defendants. (*Id*.). Plaintiff, since 2017, organized seven events, specifically the following:

- April 2018 – Wild on Spring Break
- August 2018 – Dirty Vibes Music Fest

- April 2019 – Wild on Dirty Vibes
- August 2019 – Dirty Vibes Music Fest
- February 2020 – Dirty Vibes Temptation Cruise
- October 2020 – Dirty Vibes Temptation
- April 2021- Tryst 2021 Temptation

(Compl. ¶ 24).

### B.  REGISTERED TRADEMARK AND COPYRIGHT

Plaintiff began using the "DIRTY VIBES" mark (the "Mark") in November 2017. (*Id*. ¶ 13). According to Mr. Matlock, Plaintiff and Defendant first collaborated together using the Mark at the Dirty Vibes event in July 2018. (Matlock Decl. ¶ 8).

In 2019, Plaintiff registered the trademark for "DIRTY VIBES" (the "Mark" or "DV mark"). (*Id*. ¶ 13). The registered mark covers the following services:

> (1) **International Class 039**: Arranging of cruises; Coordinating travel arrangements for individuals and for groups; Organization of travel; Organization of travel and boat trips; Providing a website featuring information on travel; Providing links to web sites of others featuring travel, and
>
> (2) **International Class 041**: Arranging and conducting nightclub entertainment events; Arranging and conducting nightclub parties; Arranging and conducting special events for social entertainment purposes; Arranging, organizing, conducting, and hosting social entertainment events; Entertainment services in the nature of hosting social entertainment events; Hosting social entertainment events, namely, adult lifestyle parties, for others; Entertainment services in the nature of arranging social entertainment events.

(Compl. ¶ 12). Plaintiff also purchased the domain name "dirtyvibes.com" and its related social media accounts. (*Id*. ¶ 15).

Additionally, Plaintiff holds all rights of use of certain copyrights. These include the following:

> (1) A group of photographs under Registration Number Registration number VAu001426732, effective date of April 6, 2021, known as "2019 Music Fest;"

(2) A group of photographs under the Registration number VAu001426692, effective date of April 6, 2021, known as "2018 Music Fest" and;

(3) The "About" Section on the "dirtyvibes.com" website under the Registration number TXu002269217, effective date of April 6, 2021.

(*Id*. ¶¶ 17–19).

### C. THE ALLEGED INFRINGEMENT

When Mr. Hughes learned Plaintiff secured trademark and copyright protection, he allegedly threatened to withhold payments for the October 2020 event and shut out Plaintiff from the April 2021 event. (*Id*. ¶ 27). Plaintiff alleges it had over 200 hotel rooms booked for the April 2021 event. (*Id*.). As a result, Plaintiff terminated its relationship with Defendants, demanded they cease and desist any future use of the Registered Mark, and ordered Defendants to pay for any remaining profits under the Agreement. (*Id*. ¶ 28).

Defendants nevertheless continued to use the Mark to promote their competing events without Plaintiff's consent or involvement. (*Id*. ¶ 29). Defendants additionally set up a competing website, "dirty-vibes.com" and other similar social media accounts with the DIRTY VIBES branding. (*Id*.). Plaintiff also alleges that Defendants copied and pasted their protected photographs on their infringing website, and even doctored photographs and videos to remove the DIRTY VIBES watermark. (*Id*. ¶ 30).

On December 30, 2020, Defendants applied for similar trademarks and registered "DIRTY VIBES" for the following categories:

(1) **Class 14**: Rubber or silicone wristbands in the nature of a bracelet;

(2) **Class 18**: Luggage tags;

(3) **Class 21**: Insulating sleeve holder for beverage cups; Insulating sleeve holders for beverage cans.

(*See* USPTO Registration, Ex. 9 to Resp. to Mot. PI, ECF No. 43-11).  Plaintiff alleges that Defendants have also sent cease and desist letters to Plaintiff's host sites and asked it to take down Plaintiff's websites and social media accounts. (Compl. ¶ 33).  Defendants allegedly have also approached Plaintiff's clients and made disparaging comments about Plaintiff to harm its reputation. (*Id*. ¶ 34).

On August 10, 2021, Plaintiff filed the instant suit, alleging the following causes of action: (1) trademark infringement in violation of 15 U.S.C. § 1114; (2) common law trademark infringement; (3) copyright infringement in violation of 17 U.S.C. § 501; (4) unfair competition in violation of 15 U.S.C. § 1125(a); (5) breach of contract; (6) intentional interference with prospective economic advantage; (7) declaratory relief; and (8) injunctive relief. (*See* Compl., ECF No. 1).  On November 12, 2021, Defendants filed a counterclaim, similarly alleging the following claims: (1) trademark infringement under 15 U.S.C. §1114(a); (2) trademark infringement under 15 U.S.C. § 1125(a); (3) common law trademark infringement; (4) trademark cancellation under 15 U.S.C. §1119; (5) copyright infringement under 17 U.S.C. § 501; (6) intentional interference with prospective advantage; and (7) defamation. (*See* Defs.' Counterclaim, ECF No. 36).  In January 2022, Plaintiff filed the instant Motion for Preliminary Injunction, (ECF No. 42).

II.   **LEGAL STANDARD**

Preliminary injunctions are governed by Rule 65 of the Federal Rules of Civil Procedure, which provides that a "court may issue a preliminary injunction only on notice to the adverse party." Fed. R. Civ. P. 65(a)(1).  Injunctive relief, whether temporary or permanent, is an "extraordinary remedy, never awarded as of right." *Winter v. Natural Res. Defense Council*, 555 U.S. 7, 24 (2008).  "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an

injunction is in the public interest." *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter*, 555 U.S. at 20). Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 20. "[C]ourts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Id.* at 24 (internal quotation marks omitted).

### III.   DISCUSSION

The Court, having considered the Complaint, Plaintiff's Motion, supporting affidavits, and accompanying exhibits, finds that Plaintiff has met the *Winter* factors as to its trademark and copyright claims and thus, the issuance of a limited preliminary injunction is appropriate.

#### A.   LIKELIHOOD OF SUCCESS ON THE MERITS

Plaintiff seeks injunctive relief on three of its eight claims alleged in the Complaint—trademark infringement, copyright infringement, and intentional interference with prospective economic advantage. (Mot. Preliminary Inj. at 12–19). The Court discusses each claim in turn.

##### 1.   Trademark Infringement

To prevail on a trademark infringement claim, a plaintiff must show it is: "(1) the owner of a valid, protectable mark, and (2) that the alleged infringer is using a confusingly similar mark." *Herb Reed Enters., LLC v. Fla. Entm't Mgmt., Inc.*, 736 F.3d 1239, 1247 (9th Cir. 2013).

###### a.   *Owner of a Valid, Protectable Mark*

Plaintiff alleges that it owns the federal trademark registration for the DIRTY VIBES trademark because: (1) the USPTO approved Plaintiff's registration for the DIRTY VIBES mark; and (2) Plaintiff used the mark in commerce before Defendants. (Mot. Preliminary Inj. at 13–16). In response, Defendants argue that they first created and used the DIRTY VIBES

1 mark. (Resp. to Mot. Preliminary Inj. at 19:4–20:5). Defendants further assert that, at best, Plaintiff and Defendants are co-owners of the same trademark. (*Id*. 20:6–21:7).[3]

"Federal registration of a trademark constitutes *prima facie* evidence of the validity of the registered mark and of [the registrant's] exclusive right to use that mark in commerce." *Quiksilver, Inc. v. Kymsta Corp.*, 466 F.3d 749, 755 (9th Cir. 2006). However, "[i]t is axiomatic in trademark law that the standard test of ownership is priority of use. To acquire ownership of a trademark it is not enough to have invented the mark first or even to have registered it first; the party claiming ownership must have been the first to actually use the mark in the sale of goods or services." *Sengoku Works Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217, 1219 (9th Cir. 1996).

Here, the Court finds that Plaintiff demonstrates that it likely owned the Mark. Both Plaintiff and Defendant assert that they registered the Mark with the USPTO. (Mot. Prelim. Inj. 13:4–8); (*see also* Resp. to Mot. Prelim. Inj. 19:4–20:5). Plaintiff filed the "DIRTY VIBES" mark on November 1, 2019, and registered it on June 2, 2020, under Class 39 and Class 41. (*See* Pl.'s United States Patent and Trademark Office Registration, Ex. C to Mot. Prelim. Inj., ECF No. 42-4). Defendant, on the other hand, filed the mark on December 30, 2020, and registered it with the USPTO on October 19, 2021, under Classes 13, 18, and 21. (*See* Defs.' United States Patent and Trademark Office Registration, Ex. 9 to Resp. to Mot. Prelim. Inj., ECF No. 43-11). Though USPTO registration of the mark is generally *prima facie* evidence of validity and ownership, Plaintiff's registration is not dispositive here because both parties seemingly filed and registered the mark.[4]

---

[3] Defendants additionally argue that Plaintiff is merely a licensee of the DV logo, which Defendants owns. (Resp. to Mot. PI 19:11–20:3). As explained above, Plaintiff demonstrates that it is the true owner of the DV logo. Defendants further rely on caselaw from the Second Circuit, which is not binding on this Court.

[4] The Court notes that Plaintiff's USPTO registration appears broader than Defendants' registration, such that Plaintiff's trademark seemingly encompasses Defendants' trademark protection. Plaintiff's registration covers the use of "DIRTY VIBES" while arranging cruises (i.e., Class 39), and arranging nightclub entertainment

Instead, the Court considers who first used the mark in commerce. The Ninth Circuit clarified that "it is not enough to have invented the mark first or even to have registered it first; the party claiming ownership must have been the first to actually use the mark in the sale of goods or services." *See Sengoku Works Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217, 1219 (9th Cir. 1996). Here, Plaintiff sufficiently demonstrates that it likely used the mark in commerce first. Like their arguments concerning USPTO trademark registration, the parties also dispute who first used the mark. Plaintiff asserts that it first used the mark on November 28, 2017, as represented on its USPTO registration of its trademark. (Mot. Prelim. Inj. 13:20–25). In response, Defendant asserts that it used the mark on November 16, 2017, and November 17, 2017, when Mr. Terhune, President of Right Connection, personally posted about the Dirty Vibes event on Facebook. (Resp. to Mot. Prelim. Inj. at 19, fn.6). Defendants claim that they cannot procure the Facebook posts because "such pages were destroyed by Facebook at Plaintiff's insistence, thereby spoiling important evidence." (*Id.*).

Plaintiff, however, critically rebuts by providing evidence suggesting that Defendants altered their Facebook posts. (*See* Facebook Posts, Ex. N to Mot. Prelim. Inj., ECF No. 42-15). On Facebook, the screenshot shows that Right Connection posted about the Dirty Vibes event on November 16, 2017. (*Id.* at 3). Defendants accordingly claim that they first used the DV mark on November 16, 2017. (*Id.*). Further inspection, however, reveals that Defendants actually published their post on December 26, 2017. As illustrated in Exhibit N, hovering over the time stamp, which says November 16, 2017, reveals that Defendants "added [the post on] December 28, 2017." (*Id.* at 3). The screenshot of the individual Dirty Vibes event post also shows December 28, 2017, as the original posting date. (*Id.* at 4). These screenshots thus suggest that Defendants likely altered the timestamp on their Facebook posts to reflect an

---

events, (i.e., Class 41). (*See* Pl.'s United States Patent and Trademark Office Registration, ECF No. 42-4). By contrast, Defendants' registration covers the use of the mark on silicone wristbands and luggage tags. (*See* Defs.' United States Patent and Trademark Office Registration, ECF No. 43-11).

earlier posting date. (*See id.*). The Court is thus unconvinced Defendant posted the Mark on November 16, 2017—allegedly 11 days before Plaintiff first used the Mark itself. Critically, Defendant's alleged date of first use (i.e., November 16, 2017) directly contradicts its alleged date of first use proffered to the USPTO (i.e., December 6, 2017). (*See* Defs.' United States Patent and Trademark Office Registration, ECF No. 43-11) (indicating that the mark was first used December 6, 2017). Defendants deceptively tried to represent an earlier usage date. Because Defendants rely on unreliable and tampered evidence to illustrate an earlier usage date, the Court finds that Plaintiff is likely the true owner of the DIRTY VIBES trademark.[5]

### b. *Likelihood of Consumer Confusion*

Plaintiff further argues that consumers were genuinely confused by Defendants' alleged infringing mark. (Mot. Prelim. Inj. 15:23–16:26). Defendants, however, do not rebut any of Plaintiff's arguments concerning the strength of the allegedly infringed mark and the similarity of the marks—factors outlined in *Sleekcraft*. (*See* Resp. to Mot. Prelim. Inj. at 18–21). Pursuant to Local Rule 7-2, "[t]he failure of an opposing party to file points and authorities in response to any motion, except a motion under Fed. R. Civ. P. 56 or a motion for attorney's fees, constitutes a consent to the granting of the motion." *See* D. Nev. Local R. 7-2(d). Because Defendants fail to respond to Plaintiff's arguments under *Sleekcraft* and otherwise do not dispute the similarity of the marks, the Court finds that there is a likelihood of consumer confusion.[6]

---

[5] Defendants additionally argue that, at best, the parties are co-owners of the DIRTY VIBES mark. Defendants, however, rely on two district court cases outside this circuit. (*See* Resp. to Mot. Prelim. Inj. 20:6–21:7). Since these two cases are not binding on this Court, the Court declines to follow Defendants' co-ownership argument.

[6] Even considering the merits, Plaintiff likely shows consumer confusion. Plaintiff trademarked the term "DIRTY VIBES" without claim to any particular font style, size, or color. (*See* Pl.'s United States Patent and Trademark Office Registration, ECF No. 42-4). Defendants used the term, "DIRTY VIBES," on its website and other promotional materials. (*See* Screenshots of Defs.' Events, Ex. P to Mot. Prelim. Inj., ECF No. 42-17). Customers have also emailed Plaintiff to clarify whether they booked an event with Plaintiff or Defendants. (*See* Email dated January 7, 2022, Ex. R to Mot. Prelim. Inj., ECF No. 42-19).

### 2. Copyright Infringement

A successful copyright infringement claim requires that the claimant demonstrate two elements: (1) ownership of a valid copyright; and (2) copying by the defendant of the protected work's protected elements. *See Smith v. Jackson*, 84 F.3d 1213, 1218 (9th Cir. 1996) (citing *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1439, 1442 (9th Cir. 1994)).

#### a. *Owner of a Valid Copyright*

Plaintiff argues that it owns the registered copyright for the 2018 Music Fest photographs, 2019 Music Fest photographs, and other content on its website. (Mot. Prelim. Inj. at 17). Defendant responds by asserting that the company does not own the copyright but rather, David Matlock, the founder and owner of Desirous Parties, owns the copyright. (Resp. to Mot. Prelim. Inj. at 21–22). In response, Plaintiff rebuts that "Mr. Matlock transferred and assigned all rights of the DV Materials to Plaintiff after Mr. Matlock was given the copyrights to the DV Materials." (Reply to Mot. PI 13:14–16).

A certificate of copyright registration constitutes *prima facie* evidence of a copyright's validity, creating a rebuttable presumption of validity. 17 U.S.C. § 410(c); *United Fabrics Int'l, Inc. v. C&J Wear, Inc.*, 630 F.3d 1255, 1257 (9th Cir. 2011); *Apple Computer, Inc. v. Formula Intern. Inc.*, 725 F.2d 521, 523 (9th Cir. 1984). 17 U.S.C. § 410(c) provides:

> In any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate. The evidentiary weight to be accorded the certificate of a registration made thereafter shall be within the discretion of the court.

*See* 17 U.S.C. § 410(c).

Here, Mr. Matlock obtained federal copyright registrations for the 2019 Music Fest Photographs, 2018 Group Trip photographs, and dirtyvibes.com. (*See* Copyright Public Catalog for 2019 Music Fest Photographs, Ex. F to Mot. Prelim. Inj., ECF No. 42-7); (*see also* Copyright Public Catalog for 2018 Group Trip Photographs, Ex. G to Mot. Prelim. Inj., Ex G to

Mot. Prelim. Inj., ECF No. 42-8); (*see also* Copyright Public Catalog for dirtyvibes.com, Ex. H to Mot. Prelim. Inj., ECF No. 42-9).  Plaintiff supplies the Court with a copy of the Assignment of Rights, in which Mr. Matlock assigns his rights to the registered copyrights to Plaintiff Desirous Parties. (*See* Schedule 1: Assigned Copyrights, Ex. BB to Reply to Mot. Prelim. Inj., ECF No. 46-13).  Given the valid assignment, the Court finds Plaintiff's certificate of copyright registration *prima facie* evidence of ownership and copyright validity.

### b. *Alleged Copying of the Protected Work*

Furthermore, Plaintiff asserts that Defendants copied its protected work by creating a competing, similar website and posted protected work on the infringing website. (Mot. Prelim. Inj. 18:1–7).  The second element of the infringement analysis requires a consideration of two factors: copying and unlawful appropriation. *See Skidmore v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020) (citing *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1116-1117 (9th Cir. 2018)).  "Copying can be demonstrated either through direct evidence or 'by showing that the defendant had access to the plaintiff's work and that the two works share similarities probative of copying,' while 'the hallmark of 'unlawful appropriation' is that the works share substantial similarities." *Corbello v. Valli*, 974 F.3d 965, 974 (9th Cir. 2020) (quoting *Skidmore*, 952 F.3d 1051, 1064 (*Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1117 (9th Cir. 2018)).

Plaintiff created a website called www.dirtyvibes.com. (*See* Screenshot of Dirty Vibes Photo Gallery, Ex. J to Mot. Prelim. Inj., ECF No. 42-11).  Defendant created a competing website called www.dirty-vibes.com. (*See* Dirty-Vibes Website, Ex. I to Mot. Prelim. Inj., ECF No. 42-10).  Plaintiff provides a copy of its copyright registration for the website: www.dirtyvibes.com. (*See* Copyright Public Catalog for dirtyvibes.com, ECF No. 42-9).  The similarity between the two websites is striking—the only difference is the dash between the two operative words.  The high resemblance between the two website names suggest that the two works "share similarities probative of copying." *Skidmore*, 952 F.3d 1051, 1064.

Plaintiff provides even more blatant evidence that Defendants copied and misappropriated its photographs. A side-by-side comparison of content on Defendants' www.dirty-vibes.com website and Plaintiff's www.dirtyvibes.com website demonstrate that Defendants copied protected photographs on their infringing website. One particular photograph of a line of women with their backs to the camera, was published on both Plaintiff's www.dirtyvibes.com website and Defendants' infringing www.dirty-vibes.com website. (*Compare* Copyright Public Catalog for dirtyvibes.com at 34, ECF No. 42-9); (*with* Screenshots of www.dirty-vibes.com at 64, Ex. I to Mot. Prelim. Inj., ECF No. 42-10).[7] Notably, Defendants do not dispute that they copied the photographs. They argue, without supporting caselaw, that Mr. Matlock is not the author of the photographs. Additionally, they blankly assert that "either the photographer who took the photographs and videos or Right Connection [. . .] are the authors of the photographs and videos and own the copyright rights." (See Resp. to Mot. Prelim. Inj. 22:3–6). Plaintiff, in its Reply, provides an invoice demonstrating that Mr. Matlock paid for the photographer by giving him a discounted room and access to the April 2019 Dirty Vibes Fest for $990 USD. (Reply to Mot. Prelim. Inj. 14:18–25); (*see also* April 2019 Stubbins Invoice, Ex. S to Reply to Mot. Prelim. Inj., ECF No. 46-4). The evidence, as presented, thus weighs in favor of the Court finding that Defendants likely copied Plaintiff's protected photographs and domain name.

### 3. Intentional Interference with Prospective Economic Advantage

A *prima facie* showing of intentional interference with prospective economic advantage requires: (1) a prospective contractual relationship between the plaintiff and a third party, (2) defendant's knowledge of the prospective relationship, (3) intent to harm the plaintiff by

---

[7] Plaintiff does not explicitly identify the infringing photograph; however, upon its own review, the Court agrees that Defendants likely copied protected photographs. The particular photograph referenced above is protected under Plaintiff's copyright of www.dirtyvibes.com, as the copyright registration includes a variety of content on the website.

preventing the relationship, (4) the absence of privilege or justification by the defendant, and (5) actual harm to the plaintiff as a result of the defendant's conduct. *J.J. Industry, LLC v. Bennett*, 119 Nev. 269, 71 P.3d 1264, 1267 (Nev. 2003).[8]

      Here, Plaintiff fails to demonstrate that it is likely to succeed on its claim for intentional interference with prospective relations because Plaintiff does not sufficiently explain Defendants' knowledge of Plaintiff's prospective relationship with MX Hotels, and crucially, how Defendant intentionally harmed Plaintiff by using the DV trademark. "Because interference with contractual relations is an intentional tort, the plaintiff must demonstrate that the defendant knew of the existing contract, or at the very least, establish 'facts from which the existence of the contract can reasonably be inferred.'" *J.J. Indus., LLC v. Bennett*, 119 Nev. 269, 274, 71 P.3d 1264, 1267 (2003). Plaintiff claims that Defendants knew about its existing and prospective contracts because "Defendants [had] contracts with MX Hotels for events promoted under their misappropriated DV brand" during the same time Plaintiff also contracted with MX Hotels. (Mot. Prelim. Inj. 18:26–18:1). Having potential contracts with the same vendor at the same time does not, however, demonstrate that Defendants knew about Plaintiff's prospective agreements with MX Hotels. In *J.J. Indus.*, the Nevada Supreme Court found that the plaintiff knew about a prospective economic relationship because the plaintiff specifically asked the third-party vendor about the status of the contract. *J.J. Indus., LLC v. Bennett*, 119 Nev. 269, 274, 71 P.3d 1264, 1267 (2003). Unlike *J.J. Indus.*, Plaintiff does not represent that Defendants asked about Plaintiff's contract with MX Hotels or any other facts in which the Court could infer knowledge. Plaintiff crucially fails to provide any caselaw to suggest that two existing contracts with the same third-party vendor, MX Hotels, establishes that Defendant knew about Plaintiff's prospective contract with MX Hotels. Accordingly, the Court finds that

---

[8] The Court notes that Plaintiff improperly relied on California's elements for an intentional interference with prospective advantage claim. (*See* Mot. Prelim. Inj. 18:11–19:24).

Plaintiff fails to demonstrate a likelihood of success on the merits of its intentional interference with prospective economic advantage claim.

### B.	IRREPARABLE HARM

Plaintiff argues that there is irreparable harm because there is threated loss of prospective customers or goodwill. (Mot. Prelim. Inj. at 20–22).  Plaintiff's market share has declined significantly, according to Plaintiff, and customers have mistakenly booked events via Defendant's fake website. (*Id*.).  In response, Defendant argues that Plaintiff cannot demonstrate imminent, irreparable harm because Plaintiff delayed over thirteen months in seeking injunctive relief. (Resp. to Mot. Prelim. Inj. at 23–26).  Defendant additionally asserts that Plaintiff has failed to demonstrate any evidence of lost profit or harm to goodwill and reputation. (*Id*.).

To carry its burden, Plaintiff must establish that it will likely suffer irreparable harm without the issuance of injunctive relief. *Winter*, 555 U.S. at 21.  Plaintiff must "demonstrate a likelihood of irreparable injury—not just a possibility—in order to obtain preliminary relief." *Id*.  "Evidence of threatened loss of prospective customers or goodwill certainly supports a finding of the possibility of irreparable harm." *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 841 (9th Cir. 2001).  Courts have also recognized that damage to goodwill and reputation supports a finding of irreparable harm. *See Aria Diagnostics, Inc. v. Sequenom, Inc.*, 726 F.3d 1296, 1304 (Fed. Cir. 2013) ("Under this court's precedent, price erosion, loss of goodwill, damage to reputation, and loss of business opportunities are all valid grounds for finding irreparable harm.").

Here, Plaintiff sufficiently demonstrates irreparable harm.  Plaintiff provides evidence that clients and customers have mistakenly booked events through Defendant Right Connection's website, thinking they instead booked an event organized by Plaintiff. (*See* Email dated January 7, 2022, Ex. R to Mot. Prelim. Inj., ECF No. 42-19).  The unknown client states

"I just now realized it's the duplicate site and its not official." (*Id.* at 2). The client further requests Plaintiff to correct "this mistake." (*Id.*). Such evidence thus illustrates threatened loss of prospective customers and goodwill as customers have and will continue to mistake Defendant Right Connection's website for Plaintiff's. Additionally, continued confusion will likely cause a loss of goodwill and reputation to Plaintiff. Accordingly, the loss of potential customers supports a finding of irreparable harm as to Plaintiff's trademark and copyright claims. *Stuhlbarg Int'l Sales Co.*, 240 F.3d at 841.

### C. BALANCE OF THE EQUITIES

"Before issuing a preliminary injunction, courts must weigh 'the competing claims of injury and [ ] consider the effect on each party of the granting or withholding of the requested relief.'" *Moroccanoil, Inc.*, 230 F. Supp. 3d at 1178 (quoting *Amoco Prod. Co. v. Village of Gambell*, AK, 480 U.S. 531, 542, 107 S. Ct. 1396, 94 L. Ed. 2d 542 (1987)).

Plaintiff argues that it will suffer significant harm if Defendants continue to copy their protected materials as it will continue to lose business with potential customers and vendors. (Mot. Prelim. Inj. 22:5–20). By contrast, Defendants assert that they will suffer significant losses in excess of at least $464,884.00 if enjoined. (Resp. to Mot. Prelim. Inj. 26:8–15). The Court agrees that both parties stand to suffer some loss depending on whether the Court issues an injunction. Accordingly, the balance of equities does not weigh in favor of either party.

### D. PUBLIC INTEREST

It is well established that trademark law "protect[s] the public from confusion by accurately indicating the source of a product." *State of Idaho Potato Comm'n v. G & T Terminal Packaging, Inc.*, 425 F.3d 708, 715 (9th Cir. 2005). "Preventing consumer confusion serves the public interest and there is a strong policy in favor of protecting rights to trademarks." *Stark v. Diageo Chateau & Estate Wines Co.*, 907 F. Supp. 2d 1042, 1067 (N.D. Cal. 2012). Here, given the strong public policy in favor of mitigating customer confusion

coupled with Plaintiff's strong showing of a likelihood of success on the merits, the Court finds that the public interest supports issuance of a preliminary injunction.

### E. SUMMARY

For the foregoing reasons, the Court finds that the *Winters* factors weighs in favor of issuing a preliminary injunction as to Plaintiff's trademark and copyright infringement claims. As to the intentional interference of prospective economic advantage, Plaintiff does not sufficiently demonstrate a likelihood of success on the merits. Thus, the Court imposes a preliminary injunction as to only two of Plaintiff's three claims: trademark infringement and copyright infringement.

### F. BOND

Defendants request a $490,000.00 bond in the event the Court decides to grant Plaintiff's Motion. (Resp. to Mot. Prelim. Inj. at 27). Defendants explain that $490,000 is the total out-of-pocket loss it will suffer if wrongfully enjoined. (*See id.*). In response, Plaintiff asserts that only a $5,000 bond is proper because Defendants' requested amount is not based on any actual evidence. (Reply to Mot. Prelim. Inj. 15:22–25).

The issuance of a preliminary injunction is conditioned on the movant posting security "in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). "The district court is afforded wide discretion in setting the amount of the bond, and the bond amount may be zero if there is no evidence the party will suffer damages from the injunction." *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 882 (9th Cir. 2003). "So long as a district court does not set such a high bond that it serves to thwart citizen actions, it does not abuse its discretion." *Save Our Sonoran, Inc. v. Flowers*, 408 F.3d 1113, 1126 (9th Cir. 2005) (citing *Friends of the Earth, Inc. v. Brinegar*, 518 F.2d 322, 323 (9th Cir. 1975)).

Here, Defendants provide an estimation of loss by Mr. Terhune, the President of Right Connection, Inc. (*See* Terhune Decl. ¶¶ 32–40). Mr. Terhune declares that, if the Court issues an injunction, Right Connection stands to lose a significant amount of lost profit since it has already organized, paid, and planned three Dirty Vibes events. (*Id.* ¶ 35). Specifically, Mr. Terhune calculates a $13,500.00 loss for customer merchandise like sunglasses and bags; $12,000.00 loss for branding materials like banners, and tablecloths; and a $464,884.00 loss from potentially 50% of current customers cancelling reservations. (*Id.* ¶¶ 37–40).

A strong likelihood of success on the merits may favor "a minimal bond or no bond at all." *California v. Tahoe Regional Planning Agency*, 766 F.2d 1319, 1326 (9th Cir. 1985). As explained above, Defendants demonstrate a strong likelihood of success that Defendants infringed on Plaintiff's trademark and copyrighted materials. Furthermore, Mr. Terhune's inflated estimation of $464,844.00 loss from cancelled reservations is unsupported. The injunction limits Defendants from using or advertising with the "DIRTY VIBES" mark. The issuance of this injunction will ultimately require that Defendants re-brand its events with a new name. Defendants will likely incur expenditures on advertising and other types of re-branding. The Court thus concludes that a $15,000.00 bond is appropriate in this case. Accordingly, the Court orders that this preliminary injunction shall take effect only upon Plaintiff's posting with the Court a bond in the amount of $15,000.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Plaintiff's Amended Motion for Preliminary Injunction, (ECF No. 12), is **GRANTED IN PART** and **DENIED IN PART**. The following terms of Plaintiff's proposed preliminary injunction are enforced herein:

1) referencing, mentioning and/or using in any way Plaintiff's "DIRTY VIBES" trademark in connection with the sale of their services;

2) referencing, mentioning and/or using in any way any other mark confusingly similar to the "DIRTY VIBES" trademark in connection with their sale of services;

3) advertising, marketing, or describing services under the trademark "DIRTY VIBES" in any manner likely to mislead consumers as to the provider of such services, and/or their affiliation with Plaintiff;

4) posting, maintaining, displaying, using, or performing Plaintiff's copyrighted images or promotional videos. In addition, Defendants shall post a prominently displayed written notice on the homepage of "dirty-vibes.com" website, reading:

This website has been required by the United States District Court for the District of Nevada to post this notice in order to avoid further confusion in the marketplace. "DIRTY VIBES" events or other services formerly held or provided through this website have no affiliation, and have never had any affiliation, with genuine DIRTY VIBES events held by DESIROUS PARTIES UNLIMITED, INC. that bear DIRTY VIBES trademark. The Court has ordered that this website may no longer utilize "DIRTY VIBES" to hold any event or provide other related services in order to avoid confusion between those held or provided by DESIROUS PARTIES UNLIMITED, INC.[9]

**IT IS FURTHER ORDERED** that Plaintiff shall post a FIFTEEN THOUSAND ($15,000.00) DOLLAR bond before this Preliminary Injunction shall take effect.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Leave to File Supplemental Brief, (ECF No. 69), is **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk of Court strike Defendants' Objection to Evidence Raised in the Motion for Preliminary Injunction, (ECF No. 45); Defendants' Objections to Evidence Raised in the Reply to the Motion for Preliminary Injunction, (ECF No. 47); Defendants' Reply to Plaintiff's Reply to the Motion for Preliminary Injunction, (ECF No.

---

[9] Because the Court finds that Plaintiff fails to meet the Winters factors as to its intentional interference of prospective economic advantage claim, the Court does not impose the following proposed provision:

intentionally interfering with Plaintiff's relationships with its vendors, customers and marketers, including, without limitation, by contacting Plaintiff's existing vendors, customers and marketers for the purpose of soliciting business or making false, misleading, or disparaging statements or otherwise discussing Plaintiff or its services with such vendors, customers and marketers

48); and Plaintiff's Response to Defendants' Objections to Evidence Raised in the Reply, (ECF No. 49), in violation of Local Rule 7-2(g).

**DATED** this __7__ day of September, 2022.

_____
Gloria M. Navarro, District Judge
United States District Court