**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| DESIROUS PARTIES UNLIMITED INCORPORATED,<br><br>　　　　　　Plaintiff,<br>　　vs.<br><br>RIGHT CONNECTION INCORPORATED, *et al.*,<br><br>　　　　　　Defendants. | Case No.: 2:21-cv-01838-GMN-BNW<br><br>**ORDER** |

Pending before the Court is the Emergency Motion for Order Striking Answer, Involuntary Dismissal of Cross-Complaint, and Monetary Sanctions for Contempt, (ECF No. 100), filed by Plaintiff Desirous Parties Unlimited Incorporated ("Plaintiff"). Defendants Right Connection Incorporated and Donald D. Hughes II (collectively, "Defendants") filed a Response, (ECF No. 105), to which Plaintiff filed a Reply, (ECF No. 108).

For the reasons set forth below, Plaintiff's Motion is **GRANTED IN PART** and **DENIED IN PART**.

**I.　BACKGROUND**

This action arises from Defendants' alleged infringement of Plaintiff's "Dirty Vibes" trademark and copyrighted material that Plaintiff uses to market its adult-oriented entertainment events. (*See* Compl., ECF No. 1). On September 7, 2022, the Court granted in part and denied in part Plaintiff's Motion for Preliminary Injunction. (PI Order, ECF No. 72). On December 5, 2022, the Court granted in part and denied in part Plaintiff's Emergency Motion to Enforce.

///

///

(Enforcement Order, ECF No. 94).  The Court incorporates the background information from these previous Orders.[1] (*See* PI Order 2:4–5:17); (Enforcement Order 2:1–3:18).

In its Enforcement Order, the Court found that Defendants were violating the PI Order by using a "dv" logo that was confusingly similar to Plaintiff's "Dirty Vibes" mark. (Enforcement Order 5:8–6:8).  Additionally, the Court noted that Defendants' new website domain address furthered the confusion. (*Id.* 6:9).  The PI Order mandated that Defendants display a disclaimer on their website informing consumers about this suit and the preliminary injunction. (PI Order 18:6–11).  Despite the Court's mandate, Defendants rerouted traffic from its old site to a new site devoid of any disclaimer. (Enforcement Order 6:9–7:20).  The Court concluded that Plaintiff established civil contempt and awarded monetary sanctions in the amount of $5,000.00 per day for each day Defendants continued to violate the PI Order, beginning on December 9, 2022. (*Id.* 8:2; 8:15–18).  Plaintiff alleges that Defendant is still in violation of the PI Order and Enforcement Order.  As such, Plaintiff now seeks an order requiring Defendants to pay these contempt sanctions, as well as an order striking Defendants' Answer, dismissing Defendants' Cross-Complaint, making the Preliminary Injunction permanent, and awarding attorneys' fees and costs associated with the instant Motion. (Mot. 2:2–11).  The Court heard oral arguments on March 8, 2023. (*See* Min. Order, ECF No. 109).

## II.   LEGAL STANDARD

"Civil contempt . . . consists of a party's disobedience to a specific and definite court order by failure to take all reasonable steps within the party's power to comply." *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993).  A district court has the inherent power to enforce its orders through civil contempt. *See Shillitani v. United States*, 384 U.S. 364, 370 (1966).  A finding of civil contempt is proper when a party disobeys a specific and definite court order by failing to take all reasonable steps within his or

---

[1] Defendants have appealed both Orders. (*See* Notices of Appeal, ECF Nos. 79, 95).

her power to comply. *In re Dual-Deck*, 10 F.3d at 695. "[T]he contempt must be proved by clear and convincing evidence." *Vertex Distrib., Inc. v. Falcon Foam Plastics, Inc.*, 689 F.2d 885, 889 (9th Cir. 1982). "[T]here is no good faith exception to the requirement of obedience to a court order. But a person should not be held in contempt if his action appears to be based on a good faith and reasonable interpretation of the court's order." *In re Dual–Deck*, 10 F.3d at 695 (internal citation and quotation marks omitted).

To establish civil contempt, Plaintiff bears the burden of showing "(1) that [Defendants] violated the court order, (2) beyond substantial compliance, (3) not based on a good faith and reasonable interpretation of the order, (4) by clear and convincing evidence." *Labor/Cmty. Strategy Ctr. v. Los Angeles Cty. Metro. Transp. Auth.*, 564 F.3d 1115, 1123 (9th Cir. 2009) (quoting *In re Dual-Deck*, 10 F.3d at 695). "Clear and convincing evidence requires greater proof than preponderance of the evidence. To meet this higher standard, a party must present sufficient evidence to produce 'in the ultimate factfinder an abiding conviction that the truth of its factual contentions are [sic] highly probable.'" *Sophanthavong v. Palmateer*, 378 F.3d 859, 866–67 (9th Cir. 2004) (quoting *Colorado v. New Mexico*, 467 U.S. 310, 316 (1984)); *see also* O'Malley, et al., Federal Jury Practice & Instructions § 104:02 (6th ed. 2022) ("'Clear and convincing evidence' is evidence that produces in your mind a firm belief or conviction as to the matter at issue."). The Supreme Court has held that "civil contempt should not be resorted to where there is a fair ground of doubt as to the wrongfulness of the defendant's conduct." *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1801 (2019) (cleaned up).

If a court finds a party in contempt, then the court must decide what remedy is appropriate. Courts have the inherent power to assess sanctions—including involuntary dismissal—where necessary "to impose order, respect, decorum, silence, and compliance with lawful mandates." *United States v. Schaffer Equip. Co.*, 11 F.3d 450, 461 (4th Cir. 1993).

///

1 Before imposing sanctions, however, a court must first find bad faith. *Mendev v. County of San Bernadino*, 540 F.3d 1109, 1130–31 (9th Cir. 2008), *overruled in part on other grounds*.

The Federal Rules of Civil Procedure permit courts to involuntarily dismiss a party's claims when the party fails to comply with the rules or a court order. Fed. R. Civ. P. 41(b); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991) (noting that court's inherent power includes power to terminate suit and warning that such "inherent powers must be exercised with restraint and discretion"). If a party violates the rules of procedure or a court order in bad faith, then courts consider the following five factors to determine whether involuntary dismissal is appropriate: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006). The decision to dismiss may be "bolstered" by "aggravating factors" such as intentional or contumacious conduct. *Sturgeon v. Airborne Freight Corp.*, 778 F2d 1154, 1159 (5th Cir. 1985).

**III.   DISCUSSION**

The Court must first determine whether Defendants violated the Court's orders. If the Court finds in the affirmative, then the Court shall determine whether said violations were in bad faith. The Court considers appropriate sanctions only if Defendants violated the Court's orders in bad faith. *See Mendez*, 540 F.3d at 1131.

Plaintiff alleges that Defendants continue to use the "Dirty Vibes" mark to promote their services, including upcoming events, via social media posts and other online platforms, in violation of the PI Order. (Mot. 16:12–19:8). At the March 8 hearing, the Court identified three distinct categories of social media posts: (1) posts made before the PI Order about events

///

///

occurring before the PI Order; (2) posts made before the PI Order about events occurring after the PI Order; and (3) posts made after the PI Order.[2]

At the hearing, the Court further explained that this case differs from many other trademark disputes. This is not a case in which a defendant, unrelated to the plaintiff, adopts and uses the plaintiff's trademark as if it were defendant's own mark. Here, Plaintiff and Defendants are former business partners. That is, previously held "Dirty Vibes" events were the products of both parties. The Court thus recognizes that Plaintiff cannot use this lawsuit to erase Defendants' labor that went into these events or the hard-earned experience and reputation Defendants deserve for their work. Moreover, old posts advertising past events cannot be considered continued use of the mark because the events being advertised have already occurred. Accordingly, the Court finds that old social media posts about events pre-dating the PI Order are not subject to the PI Order.

Some of Defendants' social media posts pre-date the PI Order but advertise future events.[3] The conduct itself, the making of the posts, pre-dates the PI Order. But consumers may seek out these posts for information regarding upcoming events. That is, the posts, if left unchanged, continue to use the "Dirty Vibes" mark to advertise upcoming events. Thus, Defendants decision to leave these posts up, unedited, constitutes a continued use of the mark, in violation of the PI Order.

The Court recognizes, however, that deleting some posts advertising future events could cause consumer confusion. As mentioned above, consumers may seek out these posts, which they may have viewed previously, for information about the events. If the posts disappear,

---

[2] Following the PI Order but before the Enforcement Order, Defendants made several social media posts that contained images of the text "www.dirty-vibes.com," Defendants' old domain address. (*See, e.g.*, Identified uses #033–34, Compilation of Violations at 17–18, Ex. A to Mot.). The Court addressed the use of the old domain address in its Enforcement Order. If further clarification is needed, the Court reiterates that using the text, "www.dirty-vibes.com," to advertise upcoming events violates the PI Order.

[3] For example, identified use #39 is an August 9, 2022, Facebook post advertising for an event occurring in 2023. (Identified use #39, Compilation of Violations at 20, Ex. A to Mot.).

consumers may wonder whether the event is still happening. Thus, it would be unreasonable to force Defendants to delete these posts outright. If such posts remain online, Defendants must edit the posts to reflect that the advertised events are not "Dirty Vibes" events.[4]

Additionally, Plaintiff alleges that Defendants' newsletter using the "Dirty Vibes" mark to promote their upcoming events violates the Court's Orders. (Mot. 17:1–3). This alleged violation, however, concerns a newsletter that pre-dates the PI Order and promotes events occurring throughout 2023. At the hearing, Defendants explained that a link on their social media page directs users to a pdf version of this newsletter. Although this violation is not as blatant and egregious and Plaintiff contends, the Court nonetheless finds that Defendants' oversight in leaving this link on their social media pages violated the PI Order.

Lastly, the Court again addressed the matter of the disclaimer on Defendants' website at the hearing. At the time of the hearing, Defendants had placed the disclaimer at the top of its new website in a font much smaller than the rest of the text. Though the Court admonished Defendants for the small font of the disclaimer, which was far from "prominent," the Court noted that the website no longer presented a bad faith violation of the PI Order.

The Court has identified several violations of the PI Order. It is the Court's understanding that as of the hearing date, or shortly thereafter, Defendants have addressed these violations and are now in compliance. Namely, Defendants have taken down any and all links on their social media page that promote events using the "Dirty Vibes" mark, deleted or edited any posts pre-dating the PI Order and advertising events to occur after the PI Order to reflect that the event is not associated with Dirty Vibes, and *prominently* displayed the disclaimer on its website (new or old). To the extent Defendants have not taken these steps, the Court orders Defendants to promptly comply with the PI Order as clarified at the hearing and in this Order and the prior Enforcement Order.

---

[4] At the hearing, counsel represented that these social media posts have since been removed.

Having found that Defendants again violated the PI Order following the Enforcement Order, the Court must now determine whether Defendants acted in bad faith, warranting sanctions. As discussed above, the links remaining on Defendants' social media pages directing consumers to an old newsletter advertising upcoming events appear to be an oversight on the part of Defendants. Defendants may not have been as thorough as they should have been in combing through their online presence to eradicate their use of the "Dirty Vibes" mark, but this failure does not prove bad faith.

Moreover, posts pre-dating the PI Order yet advertising future events fell into a grey area requiring the Court's clarification because the posts themselves were made before the PI Order. The Court concludes that Defendants' decision to leave these posts online without editing them to reflect that they are not "Dirty Vibes" events violated the PI Order, but Defendants failure to remove or edit them was not in bad faith. Lastly, the Court's displeasure with Defendants' interpretation of what it means to display a disclaimer "prominently" is not cause to find bad faith. Therefore, the Court DENIES Plaintiff's Motion to the extent that Plaintiff requests contempt sanctions and the severe penalty of striking the Answer and dismissing the Cross-Complaint. In light of Defendants' violations of the PI Order, which prompted the filing of this Motion, the Court GRANTS an award of attorneys' fees and costs associated with bringing this Motion for Plaintiff.[5]

### IV. CONCLUSION

**IT IS HEREBY ORDERED** that Plaintiff's Emergency Motion for Order Striking Answer, Involuntary Dismissal of Cross-Complaint, and Monetary Sanctions for Contempt, (ECF No. 100), is **GRANTED IN PART** and **DENIED IN PART**.

///

---

[5] The Court DENIES Plaintiff's request for an order making the Preliminary Injunction permanent. Plaintiff did not present an argument supporting this request.

1  **IT IS FURTHER ORDERED** that the Court **GRANTS** an award of attorney's fees and
2  costs associated with bringing this Motion for Plaintiff. Defendants shall pay the total sum of
3  $46,766.00 and is ordered to make the payment to Plaintiff by May 17, 2023.

4  **IT IS FURTHER ORDERED** that all other relief requested is **DENIED**.

5  **DATED** this  17  day of April, 2023.

_____
Gloria M. Navarro, District Judge
United States District Court