**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| DESIROUS PARTIES UNLIMITED INC.,<br>Plaintiff,<br>vs.<br>RIGHT CONNECTION INC., *et al.*,<br>Defendants. | Case No.: 2:21-cv-01838-GMN-BNW<br>**ORDER** |

Pending before the Court is Plaintiff Desirous Parties' Motion for Contempt, (ECF No. 276). Defendants Don Hughes and Right Connection Incorporated filed a Response, (ECF No. 278), to which Plaintiff filed a Reply, (ECF No. 280). For the reasons set forth below, Plaintiff's Motion is **DENIED.**

## I. BACKGROUND

This action arises from Defendants' alleged infringement of Plaintiff's "Dirty Vibes" trademark and copyrighted material that Plaintiff uses to market its adult-oriented entertainment events. (*See* Compl., ECF No. 1). On September 7, 2022, the Court granted, in part, and denied, in part, Plaintiff's Motion for Preliminary Injunction. (Prelim. Inj. Order, ECF No. 72). On December 5, 2022, the Court granted, in part, and denied, in part, Plaintiff's first Emergency Motion to Enforce. (First Enforcement Order, ECF No. 94). On April 17, 2023, the Court granted, in part, and denied, in part, Plaintiff's second Emergency Motion for Sanctions. (Second Enforcement Order, ECF No. 113). Defendants appealed the granting of the Preliminary Injunction and the Enforcement Order, and the Ninth Circuit affirmed this Court's disposition in both Orders. The Court incorporates the background information from these previous Orders. (*See* Prelim. Inj. Order 2:4–5:17); (First Enforcement Order 2:1–3:18).

In its First Enforcement Order, the Court found that Defendants were violating the

Preliminary Injunction Order by using a "DV" logo that was confusingly similar to Plaintiff's "Dirty Vibes" mark. (First Enforcement Order 5:8–6:8). Additionally, the Court noted that Defendants' new website domain address furthered the confusion. (*Id.* 6:9). The Preliminary Injunction Order mandated that Defendants display a disclaimer on their website informing consumers about this suit and the preliminary injunction. (Prelim. Inj. Order 18:6–11). Despite the Court's mandate, Defendants rerouted traffic from its old site to a new site devoid of any disclaimer. (First Enforcement Order 6:9–7:20). The Court concluded that Plaintiff established civil contempt and awarded monetary sanctions in the amount of $5,000.00 per day for each day Defendants continued to violate the Preliminary Injunction Order, beginning on December 9, 2022. (*Id.* 8:2; 8:15–18).

In its Second Enforcement Order, the Court found that Defendants had again violated the Preliminary Injunction Order. Specifically, Defendants had now taken down all links or edited all posts that contained the "Dirty Vibes" mark. (Second Enforcement Order 5:13–6:10). Additionally, the Court found that Defendants had not "prominently" displayed the previously ordered disclaimer on their website in violation of the Court's prior orders. (*Id.* 6:11–15). Though the Court found that Defendants again violated the Preliminary Injunction Order, it concluded that the violations were not in bad faith and therefore denied Plaintiff's requested contempt sanctions. (*Id.* 7:1–18). It did, however, grant Plaintiff $46,766.00 in attorneys' fees and costs. (*Id.* 7:24–8:2). After a ten-day jury trial in September 2025, the jury returned a verdict in favor of Plaintiff on all claims. Final judgment has not yet been entered, and several equitable issues remain for the Court to decide.

Plaintiff now alleges that Defendants are still in violation of the Preliminary Injunction Order, First Enforcement Order, and Second Enforcement Order. As a result of the ongoing damage to Plaintiff and consumer confusion caused by these violations, Plaintiff now seeks an order finding that Defendants are in contempt of this Court's orders, finding that the

Defendants' noncompliance is willful and in bad faith, requiring Defendants to remove all content displaying the DV Mark on their websites and social media, and issuing coercive sanctions in the form of daily fines until Defendants cease all use of the DV mark. (Contempt Mot., 3:16–4:4:2, ECF No. 276). Plaintiff also seeks compensatory sanctions in the form of attorneys' fees and costs. (*Id.* 4:3–4).

## II. LEGAL STANDARD

"Civil contempt . . . consists of a party's disobedience to a specific and definite court order by failure to take all reasonable steps within the party's power to comply." *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993). A district court has the inherent power to enforce its orders through civil contempt. *See Shillitani v. United States*, 384 U.S. 364, 370 (1966). A finding of civil contempt is proper when a party disobeys a specific and definite court order by failing to take all reasonable steps within his or her power to comply. *In re Dual-Deck*, 10 F.3d at 695. "[T]he contempt must be proved by clear and convincing evidence." *Vertex Distrib., Inc. v. Falcon Foam Plastics, Inc.*, 689 F.2d 885, 889 (9th Cir. 1982). "[T]here is no good faith exception to the requirement of obedience to a court order. But a person should not be held in contempt if his action appears to be based on a good faith and reasonable interpretation of the court's order." *In re Dual–Deck*, 10 F.3d at 695 (internal citation and quotation marks omitted).

To establish civil contempt, Plaintiff bears the burden of showing "(1) that [Defendants] violated the court order, (2) beyond substantial compliance, (3) not based on a good faith and reasonable interpretation of the order, (4) by clear and convincing evidence." *Lab./Cmty. Strategy Ctr. v. Los Angeles Cnty. Metro. Transp. Auth.*, 564 F.3d 1115, 1123 (9th Cir. 2009) (quoting *In re Dual-Deck*, 10 F.3d at 695). "Clear and convincing evidence requires greater proof than preponderance of the evidence. To meet this higher standard, a party must present sufficient evidence to produce 'in the ultimate factfinder an abiding conviction that the truth of

its factual contentions are [sic] highly probable.'" *Sophanthavong v. Palmateer*, 378 F.3d 859, 866–67 (9th Cir. 2004) (quoting *Colorado v. New Mexico*, 467 U.S. 310, 316 (1984)); *see also* O'Malley, et al., Fed. Jury Prac. & Instr. § 104:02 (6th ed. 2022) ("'Clear and convincing evidence' is evidence that produces in your mind a firm belief or conviction as to the matter at issue."). The Supreme Court has held that "civil contempt should not be resorted to where there is a fair ground of doubt as to the wrongfulness of the defendant's conduct." *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1801 (2019) (cleaned up).

If a court finds a party in contempt, then the court must decide what remedy is appropriate. Courts have the inherent power to assess sanctions—including involuntary dismissal—where necessary "to impose order, respect, decorum, silence, and compliance with lawful mandates." *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 461 (4th Cir. 1993). Before imposing sanctions, however, a court must first find bad faith. *Mendez v. Cnty. of San Bernadino*, 540 F.3d 1109, 1130–31 (9th Cir. 2008), *overruled in part on other grounds by Airzona v. ASARCO LLC*, 773 F.3d 1050 (9th Cir. 2014).

## III. <u>DISCUSSION</u>

The Court must first determine whether Defendants violated the Court's Orders. If the Court finds in the affirmative, then the Court must then determine whether said violations were in bad faith. The Court considers appropriate sanctions only if Defendants violated the Court's Orders in bad faith. *See Mendez*, 540 F.3d at 1131.

Plaintiff alleges four violations of the Court's Preliminary Injunction Order. First, it asserts that Defendants have created a "series of interconnected, interrelated 'DV'-branded websites" and have therefore failed to rebrand to something not confusingly similar to the Dirty Vibes mark. (Contempt Mot. 7:16–8:6). Second, Plaintiff argues that Defendants are operating this network of DV websites without the Court ordered disclaimer in violation of the Court's preliminary injunction order. (*Id.* 8:7–12). Third, Plaintiff contends that Defendants' use of

"dirty vibes" in the source code of their websites violates this Court's Order. (*Id.* 8:13–16). And lastly, Plaintiff asserts that Defendants used the Dirty Vibes mark in a promotional video on Defendant Donald Hughes's Facebook in after the Court issued its Preliminary Injunction Order prohibiting such an action. (*Id.* 8:17–24). The Court addresses each alleged violation in turn.

**A. Defendants' DV websites**

Plaintiff first alleges that Defendants' websites are violating the Court's Preliminary Injunction Order, which prohibits Defendants from "referencing, mentioning and/or using in any way any other mark confusingly similar to the 'DIRTY VIBES' trademark in connection with their sale of services." (Prelim. Injun. Order 17:25–18:1). Plaintiff contends that Defendants continue to operate several "DV Websites" that use the letters "dv" in the URL. (Contempt Mot. 13:20–16:8).[1] Defendants do not contest that they are operating these websites containing "DV" in the URL, but they instead argue that this is not a violation of the Court's Preliminary Injunction Order. (Resp. 17:22–19:13, ECF No. 278). The Court finds that Plaintiff has not met its burden of proving that the use of "dv" in a domain name is a violation of the Court's Preliminary Injunction Order.

At the time Plaintiff filed the first Motion to Enforce, Defendants were using the website www.dv-event.com. (First Enforcement Order 3:9–14). The Court found that the "new website domain address only adds to the likely confusion," because "a user who enters the www.dirty-vibes.com address is redirected to a website operated by Right Connection at www.dv-event.com." (*Id.* 6:9–18). But the Court's analysis regarding whether the website was likely causing consumer confusion was based largely on the fact that www.dirty-vibes.com redirected

[1] Defendants first argue that Plaintiff's motion should be denied because Plaintiff failed to engage in a good faith meet and confer discussions prior to filing its motions. (Resp. 12:1–23). The Court finds that Plaintiff's letter sent on May 12, 2026, satisfied the requirement for a meet and confer for the purposes of notifying Defendants about its disagreement with their usage of websites containing "dv" in the domain name. (Letter, Ex. M to Sheik Decl., ECF No. 276-2).

to www.dv-events.com, the website included the "DV" logo with the "same font, style, color scheme, spacing, and shape," and the "Dirty Vibes" trademark appeared in a video on the new website. (*Id.* 6:3–7:2). In that Order, the Court did not find that the existence of the www.dv-events.com website was a violation of its Preliminary Injunction Order. Instead, it required Defendants to add a disclaimer to that website, largely because it was a "nearly identical website that redirects web traffic" from www.dirty-vibes.com. (*Id.* 8 n. 5).

Plaintiff now asks the Court to find that the use of "dv" in the domain name is a violation of the Preliminary Injunction. The Court finds that Plaintiff has not met its burden of showing that the use of the letters "dv" in a domain name is a violation of the Preliminary Injunction Order. Again. the Court has already considered the existence of www.dv-events.com and did not require Defendants to take down the website. Instead, it required Defendants to display the disclaimer as required in the Preliminary Injunction. Thus, the Court's previous Orders did not find that the mere usage of "dv" in a website URL would be a violation of the Preliminary Injunction Order. Plaintiff fails to meet its burden of showing that the use of the letters "dv" in a domain name constitutes "referencing, mentioning, and/or using" a "mark confusingly similar to" the Dirty Vibes trademark. (Prelim. Inj. Order 17:25).[2] Thus, the Court does not find that the presence of the letters "dv" in website domain names is a violation of the Preliminary Injunction.

**B. Court-Ordered Disclaimer on Websites**

Plaintiff next asserts that Defendants' operation of these websites without the Court-ordered disclaimer also violates the Preliminary Injunction. (Contempt Mot. 16:10–13). But, for largely the same reasons explained above, the Court does not agree. The Court's original Preliminary Injunction Order required the written notice to be prominently displayed on the

---

[2] This analysis applies to all websites containing "dv" identified by Plaintiff. Defendants state that they stopped using www.dvvibrations.com in 2025, stopped using www.dvwickededen.com in 2024, and stopped using www.dvmusicfest.com in 2022, (Resp. 19:9–13), and Plaintiff does not contest that statement.

homepage of www.dirty-vibes.com. (Prelim. Inj. Order 18:4–11). In its First Enforcement Order, the Court then held that Defendants evaded compliance with the spirit of the Order when they failed to display the written notice on www.dv-events.com, a new, nearly identical website containing the DV logo, where customers would be redirected when they attempted to visit www.dirty-vibes.com. (First Enforcement Order 7:3–10). Here, Plaintiff does not assert that the dirty-vibes.com website redirects to all of these websites, nor does it allege that these websites display the Dirty Vibes logo, the DV circle logo, other confusing mark. Instead, its argument again rests entirely on the contention that the use of the letter "dv" in the domain name is itself a violation of the Preliminary Injunction. As explained above, the Court does not find that Plaintiff has met its burden of showing this is a violation. Thus, the Court finds that Defendants' operation of these websites without the disclaimer does not amount to a violation of the Preliminary Injunction.

**C. Use of "Dirty Vibes" in Website Source Code**

Plaintiff also seeks a contempt finding for the presence of the words "dirty-vibes" three times in the source code for www.dvtryst.com. (Contempt Mot. 17:12–15). It argues that embedding a trademark in website source code constitutes actionable infringement. (*Id.* 17:26–27). Defendants explain that the inclusion of "dirty vibes" in the code was an oversight, and they removed the references prior to the filing of their Response. (Resp. 20:19–21:8). Inclusion of the term "dirty vibes" in the website's code qualifies as an infringement of the Dirty Vibes mark and is therefore a violation of the Preliminary Injunction Order. *See Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1065 (9th Cir. 1999) (holding that the Lanham Act barred the defendant from including in its websites "metatags and HTML code" any term confusingly similar with the plaintiff's mark).

But Plaintiff did not submit evidence that it notified Defendants of this potential

noncompliance,[3] and Defendants have now removed all references to "dirty vibes" in the website code, so the Court does not find that these three mentions of "dirty vibes" in the website code were bad faith violations.

**D. Continued Display of "Dirty Vibes" Social Media Content**

Lastly, Plaintiff contends that, after the Court expressly ordered Defendants to remove social media posts, Defendants failed to remove a specific post on Defendant Hughes's social media page. (Contempt Mot. 12:5–14). The identified video was posted on October 24, 2022, and refers to an event taking place on October 17, 2023, as "Dirty Vibes Wicked Eden." (Matlock Decl. ¶ 18, Ex. A to Contempt Mot., ECF No. 276-1). This post was made after the entry of the Preliminary Injunction Order, but prior to either Enforcement Order. Defendants claim that they discovered the existence of this post upon the filing of Plaintiff's most recent Contempt Motion. (Resp. 21:23–22:1). They further explain that they removed hundreds of social media posts to comply with the Court's Second Enforcement Order, and their failure to remove this post was an oversight caused by the fact that the words "Dirty Vibes" were not in the textual description for the post. (*Id.* 22:1–22:9).

Once again, Plaintiff does not provide any evidence that it identified this social media post to Defendant prior to bringing this motion.[4] Defendants have now removed the post. While the act of leaving the post up was a violation of the Court's Preliminary Injunction or Second Enforcement Order, the Court once again finds that the oversight of a single post does not constitute bad faith. (*See* Second Enforcement Order 7:3–7).

**E. Sanctions and Attorneys' Fees**

Having concluded that, where Defendants did violate the Preliminary Injunction Order,

---

[3] The Notice Letter sent on May 12, 2026, did not raise this issue. (Letter, Ex. M to Sheik Decl.).

[4] The Notice Letter sent on May 12, 2026, did not specifically identify this or any violating social media post. (Letter, Ex. M to Sheik Decl.).

they did not do so in bad faith, the Court denies Plaintiff's motion for contempt sanctions.[5] It is the Court's understanding that Defendants have now removed the single social media post Plaintiff identified in its motion and have removed the term "Dirty Vibes" from its website code. To the extent they have not taken these steps, the Court orders Defendants to promptly do so to ensure compliance with the Court's Preliminary Injunction Order as clarified by this Order.

Plaintiff also seeks an award of attorneys' fees and costs incurred in connection with bringing this motion. The Court has discretion to "decide whether an award of fees and expenses is appropriate as a remedial measure." *Perry v. O'Donnell*, 759 F.2d 702, 705 (9th Cir. 1985). The Court need not find that the civil contempt is "willful" to grant an award for attorneys' fees. *Id.* One of the purposes of civil contempt is to "compensate the contemnor's adversary for the injuries which result from the noncompliance." *Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770, 778 (9th Cir. 1983).

Though the Court finds that Defendants violated the Preliminary Injunction Order, it declines to award attorneys' fees here. The Court concludes that the majority of the behavior raised in Plaintiff's Motion does not violate the Preliminary Injunction Order. Moreover, Plaintiff failed to notify Defendants of these potential violations prior to bringing this emergency motion. This failure to meet and confer on the issues of the website code and social media post required both parties and the Court to spend time and resources on this motion they would not have otherwise had to. Because the violations are relatively minor, and do not overshadow Defendants' substantial compliance with the Court's Preliminary Injunction, the Court denies Plaintiff's request for attorneys' fees and costs.

///

[5] To the extent Plaintiff's requested relief is for the Court to issue a post-trial judgment, such relief does not flow from the violations identified in this Contempt Motion.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Contempt, (ECF No. 276), is **DENIED.**

**IT IS FURTHER ORDERED** that Defendants must promptly ensure compliance with the Preliminary Injunction, to the extent they have not done so already, by deleting the October 24, 2022, social media post and removing the words "dirty vibes" from their website code.

**IT IS FURTHER ORDERED** that all relief requested is **DENIED**.

**DATED** this 29 day of July, 2026.

Gloria M. Navarro, District Judge
United States District Court