**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

DESIROUS PARTIES UNLIMITED INC.,

Plaintiff,

vs.

RIGHT CONNECTION INC., *et al.*,

Defendants.

Case No.: 2:21-cv-01838-GMN-BNW

**ORDER ON POST-TRIAL ISSUES AND FINDINGS OF FACT AND CONCLUSIONS OF LAW**

The legal claims in this matter came for trial before a jury from September 22 to October 6, 2026. Following the presentation of evidence and closing arguments, the jury returned unanimous verdicts in favor of Plaintiff Desirous Parties and against Defendants Right Connection and Donald D. Hughes. (*See generally* Jury Verdict, ECF No. 239). In addition to the legal claims that were tried before the jury, there are equitable issues that the Court must decide. As to those equitable issues, the Court makes the following findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure.

## I. <u>BACKGROUND</u>

After a ten-day trial, the jury returned a verdict in favor of Desirous Parties on all claims. Specifically, on Desirous Parties' trademark infringement claim, the jury found that both Defendants are liable to Desirous Parties, that Donald D. Hughes intentionally induced Right Connection to infringe the trademark, that Defendants did not act together such that each is responsible for the same indivisible harm. The jury awarded $250,000 in actual damages and found that Right Connection should be allocated 70% of the damages and Donald D. Hughes should be allocated the other 30%. The jury also issued an advisory verdict that Right Connection should disgorge $765,000 in profits in addition to the actual damages awarded.

The jury further found that Defendants are liable to Desirous Parties for breach of contract, and that Desirous Parties is entitled to $73,415 in damages resulting from that breach. Because they found that Defendants did not act together such that each is responsible for the same indivisible harm, the jury found that Right Connection should be allocated 30% of the damages and Donald D. Hughes should be allocated the other 70%.

Regarding Desirous Parties' claim for interference with prospective economic advantage, the jury found both Defendants liable and awarded $382,500 in damages. Again, because it found that Defendants did not act together, the jury found that Right Connection should be allocated 30% of the damages and Donald D. Hughes should be allocated the other 70%.

Lastly, the jury found Desirous Parties not liable to Right Connection or Donald D. Hughes for trademark infringement, copyright infringement, interference with prospective economic relations, or defamation.

The following equitable issues remain for the Court to decide: (1) whether to grant injunctive relief under 15 U.S.C. § 1116; (2) whether to adjust the jury's award of actual damages by using a multiplier under 15 U.S.C. § 1117(a); and (3) the amount of disgorgement of profits damages Desirous Parties is entitled to. The Court makes the following findings of fact and reaches the following conclusions of law regarding the remaining equitable issues.[1]

---

[1] Also pending before the Court is Defendants' Motion for Leave to File Excess Pages in their Response brief, (ECF No. 266). In its Reply, (ECF No. 263), Desirous Parties urges the Court to either strike Defendants' entire Response Brief or disregard all arguments beyond page 24 for failing to comply with the Local Rules.

First, the Court notes that a different separate document must be filed for each form of relief requested per the Local Rules. LR IC 2-2(b). Because Desirous Parties sought the striking of Defendants' brief, it should have filed a separate Motion to Strike, which would have then allowed Defendants the opportunity to file a response. Desirous Parties' failure to do so resulted in Defendants' need to file an improper sur-reply and a Motion for Leave to File Excess Pages "in the character of a sur-reply." (Resp. Mot. Leave 1:20–21, ECF No. 267). Defendants should be afforded an opportunity to respond to Desirous Parties' motion to strike; thus, the Court declines to penalize Defendants for those filings. To that end, the Court construes the pending briefing as a Motion to Strike, Defendants' Response, (ECF No. 266), and Desirous Parties' Reply, (ECF No. 267).

Second, as to the merits of the Motion to Strike, the Court declines to exercise its discretion to strike Defendants' overlength brief or the five additional pages over the page limit. LR IA 10-1(d) ("The court *may* strike any document that does not conform to an applicable provision of these rules . . . ." (emphasis added)); *see also Beardshear v. Shilo Mgmt. Corp.*, No. C06-5175 RBL, 2008 WL 906748, at *1 n.1 (W.D. Wash. Apr. 1,

## I. FINDINGS OF FACT[2]

1. The equitable claims before the Court are based on the same underlying facts as the legal claims presented to the jury. Therefore, with regard to the equitable issues, the Court is bound by the jury's factual findings under the doctrine of collateral estoppel. *See Sanders v. City of Newport*, 657 F.3d 772, 783 (9th Cir. 2011) "[W]here legal claims tried by the jury and equitable claims tried by the court as 'based on the same set of facts, the Seventh Amendment requires the trial judge to follow the jury's implicit or explicit factual determinations.'"). The Court thus adopts the findings embodied in the jury's verdict. (Verdict, ECF No. 239).
2. Plaintiff Desirous Parties Unlimited, Inc. is a website that promotes all lifestyle events produced by Desirous Parties. (Day 2 Tr. 8:11–20, ECF No. 251).
3. David Matlock is the sole shareholder, director and officer of Desirous Parties. (Am. Joint Pretrial Order ("JPTO") 4:16, ECF No. 143).
4. In 2017, David Matlock and Defendant Don Hughes met and agreed that Hughes's company, Right Connections Incorporated, would provide travel vendor services for Desirous Parties' events, in exchange for 50% of the profits per event. (Day 2 Tr. 21:13–22).

---

2008) (citing *Swanson v. U.S. Forest Serv.*, 87 F.3d 339, 345 (9th Cir. 1996)) ("[W]hether to strike all or part of an overlength pleading is within the discretion of the court."). Defense counsel represents that he did not believe the page limit in LR 7-3 applied to this type of brief. Given the prejudice to Defendants that would result from striking the additional five pages, including a lack of opposition to several key arguments before the Court, the Court would be more inclined to allow Defendants to file an amended brief that complies with the page length. *See Burris v. First Reliance Standard Life Ins. Co.* In the interests of judicial efficiency, however, the Court declines to do so and accepts the five additional pages in Defendants' Response Brief. Despite its decision to decline to exercise its discretion to strike the overlength brief, the Court admonishes Defendants to take care to comply with the Local Rules of this Court moving forward.

[2] To the extent any of the Court's findings of fact may be considered conclusions of law or vice versa, they are so deemed.

5. Plaintiff first used the Dirty Vibes trademark in commerce on November 28, 2017, to promote an event under the Dirty Vibes brand. (Dirty Vibes Social Media Post, Pl.'s Ex. 85).
6. In 2018, Desirous Parties put on an event called "Wild On," (Day 2 Tr. 43:7–12), and an event titled "Dirty Vibes Music Fest," (Day 2 Tr. 64:12–16), (Dirty Vibes Social Media Post, Pl.'s Ex. 85), with Right Connection as the travel vendor, (Day 2 Tr. 43:7–12).
7. In 2019, Plaintiff purchased the domain name www.dirtyvibes.com. (Invoice for Domain, Pl.'s Ex. 83).
8. Also in 2019, Desirous Parties hosted two events branded with the "Dirty Vibes" name: one in April, (Flyer, Pl.'s Ex. 39), and another in August, (Marketing Email, Pl.'s Ex. 38), again with Right Connection as the travel vendor, (Day 2 Tr. 69:20–71:6; 73:24–74:13).
9. On June 2, 2020, Plaintiff obtained a trademark registration for the Dirty Vibes work mark. (Dirty Vibes Trademark Registration, Pl.'s Ex. 87).
10. In 2020, Matlock noticed inconsistencies in the numbers on the financial accounts provided by Right Connection and demanded further accounting. (Day 2 Tr. 71:16–72:5).
11. Around the same time, Hughes learned that Plaintiff had registered the Dirty Vibes trademark and demanded Matlock assign it to him. (*Id.* 129:1–12). As a result of Matlock's refusal to transfer ownership of the trademark, the business relationship between Plaintiff and Defendants soured. (*Id.* 130:1–3).
12. After Matlock refused to transfer ownership of the trademark, and the parties had a falling out, Hughes and Right Connection continued to use the mark to put on events. (*Id.* 144:18–22). Defendants also created a new website (www.dirty-vibes.com) and

a new Facebook page called MyDirtyVibes. (*Id.* 145:19–148:7); (Website, Pl.'s Ex. 52); (Facebook Page, Pl.'s Ex. 78).

13. By the end of 2020, Plaintiff sent a cease and desist letter to Defendants providing notice that Defendants were infringing Plaintiff's Dirty Vibes trademark. (Cease and Desist Letter, Pl.'s Ex 82).

14. In August 2021, when Defendants continued to use the Dirty Vibes mark in promoting its events that were not affiliated with Desirous Parties, Desirous Parties filed this lawsuit for trademark infringement. (Compl., ECF No. 1).

## II. <u>CONCLUSIONS OF LAW</u>

In its post-trial brief, Desirous Parties addresses five issues: (1) treble damages for its actual trademark damages; (2) disgorgement damages; (3) Defendants' joint and several liability; (4) entry of a permanent injunction; (5) Plaintiff's abandoned claims. The Court addresses each in turn.

### A. Treble Damages

At trial, the jury awarded Plaintiff $250,000 in actual damages for its trademark infringement claims. Plaintiff seeks discretionary treble damages under 15 U.S.C. § 1117(a). Plaintiff asserts that treble damages are necessary to fully compensate Plaintiff in light of Defendants' pattern of willful and egregious infringement. (Pl.'s Post Trial Br. 2:19–10:6). Defendants make three arguments as to why the Court should not award treble damages: (1) Plaintiff waived a request for treble damages by not including such a request in the Amended Joint Pretrial Order; (2) Plaintiff did not produce any evidence of actual damages prior to trial; and (3) there is no admissible evidence to support a finding that treble damages are required to compensate Plaintiff. (Def.'s Post Trial Br. 5:9–15, ECF No. 254). The first two arguments are challenges to the jury's damages award and thus would be properly brought in a Rule 50(b)

motion.[3] Accordingly, the Court will not address them here. For the purposes of this motion, the Court only considers whether there is evidence to support treble damages for Plaintiff on its trademark infringement claims.

The Lanham Act provides that:

> in assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. Such sum in either of the above circumstances shall constitute compensation and not a penalty.

15 U.S.C. § 1117(a). "[T]he trial court's primary function should center on making any violations of the Lanham Act unprofitable to the infringing party." *Playboy Enters. Inc. v. Baccarat Clothing Co.*, 692 F.2d 1272, 1274 (9th Cir. 1982). Actual damages should "constitute compensation and not a penalty." *Skydive Arizona, Inc. v. Quattrocchi*, 673 F.3d 1105, 1114 (9th Cir. 2012) (quoting 15 U.S.C. § 1117(a)). "[T]he Lanham Act has been construed to expressly forbid the award of [enhanced] damages to punish an infringer." *Id.* Although courts may not enhance damages purely to punish the defendant, *id.* at 1115, courts may consider the defendant's willfulness in the enhancement determination. *Nintendo of Am., Inc. v. Dragon Pacific Int'l*, 40 F.3d 1007, 1010 (9th Cir. 1994).

Courts sometimes award treble damages because economic harm is hard to prove, where there is loss to reputation and goodwill, and to deter future infringing conduct. *See, e.g.*, *PepsiCo, Inc. v. Triunfo-Mex, Inc.*, 189 F.R.D. 431, 432 (C.D. Cal. 1999); *Tu Thien The, Inc. v. Tu Thien Telecom, Inc.*, 668 F. App'x 299, 300 (9th Cir. 2016) (explaining that a "court may consider any loss of reputation and goodwill"); *La Quinta Corp. v. Heartland Props. LLC*, 603 F.3d 327, 343 (6th Cir. 2010) (stating that enhancement of damages is also appropriate when

[3] In fact, Defendants explain that they "intend to address the impropriety of the jury's award of actual damages by post-judgment motions" under Federal Rules of Civil Procedure 50(b) and 59.

"imprecise damage calculations fail to do justice, particularly where the imprecision results from defendant's conduct").

Desirous Parties' main argument for the enhancement of damages is that Defendants' infringement was "willful, deliberate, and egregious." (Pl.'s Post Trial Br. 2:20–21).[4] In support of this argument, Desirous Parties points to Defendants' inclusion of a false date of first use in their Counterclaim, their manufactured evidence to support that first use date, Hughes' inconsistent testimony about his use of "Dirty Vibes" in connection with his prior business, and Defendants' violations of this Court's preliminary injunction order. (*Id.* 2:20–6:28). Desirous Parties further argues that treble damages are necessary for it to be fully compensated following extensive infringement, and to take all further incentive out of further infringement. (*Id.* 7:1–10:6). While focusing largely on the culpability of Defendants' behavior, Plaintiff insists that it is not asking the Court to apply a multiplier with a punitive purpose because such an action is not permitted by law. (9:28–10:6). Defendants respond that there is no evidence to support a finding of willful infringement because Right Connection believed in good faith that it owned the Dirty Vibes trademark. (Def.'s Post Trial Br. 13:12–18). They further contend that their alleged violations of the preliminary injunction do not support a finding that their infringement was willful. (*Id.* 15:7–16:13).

To begin, Defendants' assertion that treble damages may *only* be awarded in cases of willful infringement is incorrect. While it is true that a court is required to impose treble damages in counterfeiting cases when there is a finding that a defendant intentionally infringed, 15 U.S.C. § 1117(b), the same is not true for trademark damages, *id.* 1117(a). Nevertheless,

[4] The parties did not submit the question of whether Defendants' trademark infringement was willful. So, the jury did not make a finding as to whether Defendants' infringement was willful, nor did they consider willfulness as a factor when awarding damages for the infringement. (Jury Instructions at 29–30, ECF No. 239). If determining the equitable claims requires proof of a fact that the jury did not implicitly or expressly find, the district court must make its own determination. *See Dollar Sys., Inc. v. Avcar Leasing Sys., Inc.*, 890 F.2d 165, 170–71 (9th Cir. 1989).

willfulness is a factor the Court can consider in its determination of whether to enhance actual damages, *Nintendo of Am.,* 40 F.3d at 1010, and the Court finds that Defendants' infringement was willful.[5] In making that finding, the Court takes into account that Defendants asserted a false first use date in their Counterclaim based on a Facebook post that the Court has previously found to be "tampered." (Order on Prelim. Inj. 9:7, ECF No. 72). Not only did Defendants' Counterclaim assert a date of first use relying on that tampered evidence, but Defendants presented that tampered Facebook post at trial and put on testimony claiming it was not tampered. Desirous Parties rebutted that testimony with a live demonstration of how to backdate a Facebook post and what a Facebook post looks like after it has been backdated. Defendants argue that they did not argue first use based on that Facebook post at trial and that they had a separate good faith belief that they owned the Dirty Vibes trademark. But if Defendants had a good faith belief that they owned the trademark at the time of the filing of this lawsuit, they would not have needed to submit to the Court a Facebook post that they had backdated to support its claim of first use. These facts, compounded with Defendants failure to comply "with the spirit of the [Preliminary Injunction] Order" on two separate occasions, (*see* Order on Mot. Enforce, ECF No. 94; Order on Emergency Mot., ECF No. 114), warrants a finding that Defendants' infringement was willful.

But a finding of willfulness does not end the Court's analysis. The Court is persuaded by Desirous Parties' assertions that, because there are very few competitors in the relevant market, the infringement had a particularly acute effect and resulted in a larger benefit to Defendants and larger harm to Desirous Parties. (Pl.'s Post Trial Br. 8:16–22 (citing *Merck*

[5] The parties did not submit the question of whether Defendants' trademark infringement was willful. So, the jury did not make a finding as to whether Defendants' infringement was willful, nor did they consider willfulness as a factor when awarding damages for the infringement. (Jury Instructions at 29–30, ECF No. 239). The Court therefore makes its own determination on willfulness because, if determining the equitable claims requires proof of a fact that the jury did not implicitly or expressly find, the district court must make its own determination. *See Dollar Sys., Inc. v. Avcar Leasing Sys., Inc.*, 890 F.2d 165, 170–71 (9th Cir. 1989).

*Eprova AG v. Gnosis S.p.A*, 760 F.3d 247, 263 (2d Cir. 2014))). Further, the Court agrees that Defendants reaped additional "intangible benefits" by using the name Dirty Vibes that are not captured in the lost profit calculation. (*Id*. 8:21–22). But Desirous Parties does not provide sufficient support for its claim that it would not be properly compensated unless the Court *tripled* the jury's actual damages award. It points to few concrete facts to help the Court ascertain the scope and value of the harm that it is claiming would go uncompensated under the jury's original award. Almost the entirety of Desirous Parties' argument relies on the willfulness of Defendants' infringement, but, as Desirous Parties noted itself, an enhancement of damages cannot be applied solely to punish Defendants for their willful infringement.

Keeping in mind, as it must, that actual damages should "constitute compensation and not a penalty," the Court finds that increasing the actual damages award by a multiplier of two is appropriate here. This decision is based primarily on a finding that there is a "potential harm from lingering misimpressions that is unlikely to be fully captured by the lost profits." *See Binder v. Disability Grp., Inc.*, 772 F. Supp. 2d 1172, 1183 (C.D. Cal. 2011) (citing *Taco Cabana Int'l Inc. v. Two Pesos, Inc.*, 932 F.2d 1113, 1127 (5th Cir. 1991) ("[E]nhancement could, consistent with the principles of equity' promoted in section 35, provide proper redress to an otherwise undercompensated plaintiff where imprecise damage calculations fail to do justice, particularly where the imprecision results from defendant's conduct.")).

In deciding whether to enhance the award for actual damages, the Court's "primary function should center on making any violations of the Lanham Act unprofitable to the infringing party." *Playboy Enters.*, 692 F.2d at 1274. The Court finds that an actual damages award of $500,000 (double that of the jury's actual damages award), along with the disgorgement damages discussed below, ensures that Defendants' infringement was not profitable without rising to the level of giving Desirous Parties a "windfall." *Fifty-Six Hope Road Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059 (9th Cir. 2015).

**B. Disgorgement of Profits**

In addition to actual damages, a party whose trademark has been infringed is entitled to recover the defendant's profits. 15 U.S.C. § 1117(a). The jury provided an advisory verdict of $765,000 on Desirous Parties' trademark disgorgement damages. (Verdict 4:12–19). "[D]isgorgement of profits is an equitable issue ordinarily left to the court." *Harbor Breeze Corp. v. Newport Landing Sportfishing, Inc.*, 28 F.4th 35, 39 (9th Cir. 2022). Consequently, even though the Court had the jury give an advisory verdict on the disgorgement of profits issue, the Court is not bound by such advisory verdict and instead must independently determine whether disgorgement of profits damages should be awarded and, if so, in what amount.

Desirous Parties contends that the advisory verdict of $765,000 is severely reduced compared to the $1,923,859.86 in revenues it proved. Because it argues that Defendants didn't meet their burden to show expenses and because an award of full revenues is necessary to ensure Desirous Parties is fully compensated, Desirous Parties asks the Court to award that full amount of revenues it proved as disgorgement damages. (Pl.'s Post Trial Br. 10:8–17:21). In response, Defendants argue that, if the Court awards any disgorgement of profits damages, they should be in the amount of $31,818.81. (Def.'s Am. Post Trial Br. 23:8–9).

An accounting of profits is never automatic and never a matter of right. *See* 4 McCarthy on Trademarks and Unfair Competition § 30:59 (5th ed.). Instead, disgorgement is "subject to the principles of equity." 15 U.S.C. § 1117. Specifically, those equitable considerations can include: (1) "a defendant's mental state," such as "whether the [defendant] had the intent to confuse or deceive, (2) whether sales have been diverted, (3) the adequacy of other remedies, (4) any unreasonable delay by the plaintiff in asserting [the plaintiff's] rights, (5) the public interest in making the misconduct unprofitable, and (6) whether it is a case of palming off." *Harbor Breeze Corp. v. Newport Landing Sportsfishing, Inc.*, SACV 17-01613-CJC, 2023 WL

2652855, *4 (C.D. Cal. Mar. 13, 2023). Courts have discretion to fashion relief based on the totality of the circumstances, and while a defendant's mental state is "a highly important consideration in determining whether an award of profits is appropriate," there is no requirement that a defendant's infringement be "willful" for a disgorgement of profits. *See Romag Fasteners, Inc. v. Fossil, Inc.*, 590 U.S. 212, 219–220 (2020).

Having found above that Defendants infringement was willful, and in order to ensure that Defendants misconduct is unprofitable, the Court finds that awarding disgorgement damages is necessary here. However, it does not agree with Desirous Parties' contention that an award of the full amount of revenues, with no deductions of costs and expenses, would be equitable in this case. A disgorgement award of Right Connection's revenues for the five Dirty Vibes events it held without Desirous Parties, when Defendants' profits were certainly not that high, would undoubtedly result in improperly giving Desirous Parties a "windfall." *See Fifty-Six Hope Rd. Music*, 778 F.3d at 1073.

For the calculation of disgorgement of profits damages, the plaintiff has the initial burden to prove the amount of gross revenue from the infringing activity, and then the defendant has the burden of proving expenses. *Lindy Pen Co., Inc. v. Bic Pen Corp.*, 982 F.2d 1400, 1408 (9th Cir. 1993). The parties agree that the relevant inquiry here is the total profits from the five "Dirty Vibes" events that Right Connection held from the date Desirous Parties terminated the relationship with Right Connection through the date the preliminary injunction was entered. (Def.'s Post Trial Br. 20:20–26); (Pl.'s Post Trial Br. 11:18–19). Moreover, Defendant does not dispute that Right Connection generated $1,923,759.86 in gross revenue from those five events. (Def.'s Post Trial Br. 20:20–23). The parties' dispute is thus centered on whether Defendants met their burden of establishing any deductible expenses.

Defendants put on evidence at trial that Right Connection was required to pay the resort for the rooms it sold. Desirous Parties takes issue with the credibility of Terhune's testimony

regarding the expenses. By awarding $765,000 in an advisory verdict for disgorgement of profits damages, the jury likely subtracted $1,158,759.86 in expenses from the parties' agreed gross revenue amount of $1,923,759.86. In doing so, the jury implicitly found that Terhune's testimony about costs was sufficiently credible to support Defendants' burden of proving Right Connection's costs. The Court agrees. Though Desirous Parties argues that Tehrune "entirely lacked personal knowledge" about the costs of the event, (Pl.'s Post Trial Br 14:22), his testimony provided otherwise. Tehrune testified that he was personally familiar with each event's expenses and would have known the costs of each event at the time the events took place. (Day 7 P.M. Tr. 10:10–15, 16:22–17:2, 19:5–12, 20:20–23, 21:24–22:2). This testimony sufficiently provided the foundation for Tehrune's testimony regarding the costs of the events.

Tehrune provided the following costs for the five events at issue:

- April 2021: $279,000 (Day 7 P.M. Tr. 16:17);
- August 2021: $258,000 (*Id.* 19:1);
- October 2021: $220,000 (*Id.* 20:17);
- April 2022: $402,000 (*Id.* 21:21); and
- July 2022: $260,000 (*Id.* 23:1).

The total cost for the five events is $1,419,000. Subtracting those costs from the gross revenue of $1,923,759.86 leaves $504,759.86 in profits.

Defendants argue that Right Connection is also entitled to deduct overhead costs in the amount of $355,947.71 from the revenues. (Def.'s Post Trial Br. 21:24–22:20). In support of this argument, Defendants argue that Terhune testified that Right Connection's gross profit margin is 18.5%. (*Id.* 22:2–4 (citing Day 7 P.M. Tr. 24:25–25:3, ECF No. 259)). Terhune testified that Right Connection incurs overhead expenses for "salaries for the employees, telephone lines, computer, rent charges, collocation, internet access expenses." (Day 7 P.M. Tr. 23:6–13). He further explained that he calculated the average percentage of gross revenues

from each event are spent on overhead costs over nine years of events, and that amounted to a 18.5% gross profit margin. (*Id.* 1523:15–25:3). Based on that testimony, Defendants ask the Court to deduct 18.5% of the gross revenue for each event, resulting in $355,947.71 in additional deductions for overhead costs. (Def.'s Post Trial Br. 22:5–14). Terhune's testimony was conclusory, lacked any detail about how he reached that number, and is unsupported by any documentation supporting any of those costs. Thus, the Court cannot identify how he reached the 18.5% number. Without any evidence beyond Terhune's conclusory statement that 18.5% of Right Connection's revenues go to overhead costs, the Court cannot find that Defendants satisfied their burden of proving their overheard costs.[6]

Lastly, Defendants contend that only 20% of the gross revenues from Right Connection's Dirty Vibes events are attributable to the use of the Dirty Vibes trademark, and thus only 20% of its profits should be awarded. For the same reasons as those explained above regarding overhead costs, the Court finds that Hughes' conclusory and unsupported statement that only 20% of the profits were attributable to the use of the Dirty Vibes trademark is not sufficient to meet Defendants' burden of proving its proposed deductions. The Court therefore declines to reduce its disgorgement of profits award by 80%.

In sum, the Court finds that Defendants proved a total of $1,419,000 in expenses, as explained above. The Court therefore deducts that amount from the parties' agreed upon total revenues of $1,923,759.86 to arrive at a total of $504,759.86 in disgorgement of profits damages.

**C. Defendants' Joint and Several Liability**

Plaintiff argues that, as a result of the jury's verdict that Hughes induced Right Connection to infringe Desirous Parties' trademark, any trademark damages entered as a

[6] Indeed, though the Court reaches this conclusion on its own weighing of the evidence, it notes that the jury does not appear to have deducted Defendants' proposed overhead costs from its advisory disgorgement award.

judgment against Right Connection must also be entered jointly and severally against Hughes. (Pl.'s Post Trial Br. 18:1–3). Defendants reject this argument, instead asserting that the jury expressly rejected joint and several liability in its answers to Question 5 and 8 where it determined that Defendants did not act together such that each is responsible for the same indivisible harm. (Def.'s Post Trial Br. 27:6–12); (Verdict 3:24–4:3; 5:3–8). Defendants' argument mistakenly conflates findings of direct and contributory infringement. The jury's answers to Question 3 and Questions 5 and 8 are not inconsistent. The jury was provided with the Ninth Circuit Model Jury Instruction 15.20 entitled "Derivative Liability—Inducing Infringement" which provides in relevant part that, "[a] person is liable for trademark infringement by another if the person intentionally induced another to infringe the trademark." Based on that instruction, the jury's answer to Question 3 constitutes the jury's finding of Hughes' *derivative* or contributory liability. Separate from the issue of whether Hughes is contributorily liable for inducing Right Connection to infringe, the jury's answers to the Questions 5 and 8 confirm the jury's conclusion that Hughes and Right Connection did not act together in terms of *direct* liability. While Defendants assert that those two outcomes are necessarily inconsistent, the Court finds they are not. Accordingly, in accordance with the jury's finding that Hughes intentionally induced Right Connection to infringe Desirous Parties' trademark, the Court must enter the judgment against Right Connection also against Hughes as joint and severally liable.

**D. Injunctive Relief**

The Lanham Act provides that courts "shall have power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable." 15 U.S.C. § 1116. For a permanent injunction to issue, the plaintiff must demonstrate:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).

With regard to the first *eBay* factor, Plaintiff suffered an irreparable injury due to Defendants' infringement of its Dirty Vibes trademark. Further, through their counterclaims, Defendants asserted the right to continue to use Plaintiff's marks. As a result of Defendants' infringement, Plaintiff's goodwill was harmed, and Plaintiff was required to stop holding events under the name Dirty Vibes. Without injunctive relief, Plaintiff would continue to suffer injury to its goodwill and would be unable to use its trademark.

As to the second factor, monetary damages are an insufficient remedy to compensate Plaintiff for the same reasons as stated in the preceding paragraph. *See Century 21 Real Est. Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988) ("[T]here is no adequate remedy at law for the injury caused by a defendant's continuing infringement."). On the third factor, the balance of equities weighs in favor of an injunction. Without an injunction, Plaintiff will continue to lose goodwill. If an injunction is issued, Defendants will only be required to cease their infringing activities. Lastly, with respect to the fourth factor, an injunction is in the public interest because it gives effect to the jury's verdict, and "[t]he public has an interest in avoiding confusion between two companies' products," *Internet Specialties W., Inc. v. Milon–DiGiorgio Enters., Inc.*, 559 F.3d 985, 993 n. 5 (9th Cir. 2009). Accordingly, the Court concludes that the *eBay* factors weigh in favor of injunctive relief and will therefore enter judgment granting a permanent injunction.

**E. Plaintiff's Abandoned Claims**

Plaintiff requests dismissal of its claim for copyright infringement, the claim on which it did not present evidence at trial. (Pl.'s Port Trial Br. 20:27). Defendant does not respond. Because no evidence was presented on this claim and no verdict was reached, the Court DISMISSES Plaintiff's claim for copyright infringement with prejudice.

## III. CONCLUSION

**IT IS HEREBY ORDERED** that Plaintiff's copyright infringement claim is **DISMISSED with prejudice.**

**IT IS FURTHER ORDERED** that the Clerk of Court is kindly directed to enter judgment in favor of Plaintiff Desirous Parties and against Defendants Right Connection, Inc. and Donald D. Hughes. The judgment must reflect $500,000 of actual damages and $504,759.86 of disgorgement damages for Plaintiff's trademark infringement claim. It should also reflect that Defendant Donald D. Hughes is joint and severally liable for the trademark infringement damages allocated to Right Connection. The judgment should otherwise be consistent with the jury's verdict, (ECF No. 239).

**IT IS FURTHER ORDERED** that, within 14 days of entry of final judgment, Desirous Parties must file a proposed permanent injunction against Right Connection, Inc. and Donald D. Hughes.

///

///

///

///

///

///

///

**IT IS FURTHER ORDERED** that, within 14 days of entry of this order, Desirous Parties must file any request for attorney's fees in accordance with Local Rule 54-14. Defendants will then have 7 days to file a response, and Desirous Parties will have 7 days to file a reply.

The Clerk of Court is kindly directed to close this case.

**DATED** this __6__ day of August, 2026.

Gloria M. Navarro, District Judge
UNITED STATES DISTRICT COURT